The United States Court of Appeals for the Ninth Circuit is now in session. Good afternoon. Welcome to the Ninth Circuit. And Judge Gould and I are very pleased to welcome Judge Rustani from the Court of International Trade. She has sat with us on a number of Yes, I can hear you. Thank you. And can both counsel hear us? Yes, Your Honor. Right. We can see you fine. So the first case for argument this afternoon is a state of Clemente Nahara Aguirre v. Riverside. And you may proceed. Thank you, Your Honor. Tony Sane on behalf of Appellant and Defendant below Riverside County Sheriff's Department Deputy Sergeant Dan Ponder. May it please the court, I'd like to respectfully reserve three minutes of my time for rebuttal. You may do that. And I'll try to watch as well. There is do you see a clock? I do, Your Honor, but it's not running. I know it's hard to do both. You may proceed. Thank you, Your Honor. This court should reverse the trial court's denial of summary judgment on the basis of qualified immunity and instead order that summary judgment be granted for two reasons. First, appellee plaintiffs below failed in their burden to show that it was clearly established law at the time of our April 2016 incident that conduct directly analogous to Sergeant Ponder's conduct may have been unconstitutional because plaintiffs relied either on cases that were decided after our April 2016 incident or on cases with substantially dissimilar facts. And second, to the extent that plaintiff contends that this court is deprived of jurisdiction on the basis of disputed facts, plaintiff does so based on issues that are improperly before the court as reasonable inferences based on Supreme Court precedents that defines what is a permissible reasonable inference for purposes of Rule 56. Now, to elaborate on my first point, Your Honor, there are five cases that plaintiffs cite to that are decided post-incident. The Zion case, which is a 2017 case, the Newmaker case, which is seven months after our incident in November of 2016, the Tucker and Smith cases, which are district court cases for 2018, and the Supreme Court has stated in the, I believe it's Wilson case, that it's not even clear that circuit court case law can constitute clearly established law, let alone district court case law. And the Chien-Bui case, which is also a 2017 case. Obviously, the Supreme Court has made it absolutely crystal clear in the Rostow case and in Wilson that cases must have been decided before the incident issue. Officers are not required to be prophets or soothsayers. They're only supposed to know the case law that's out in existence at the time of our particular incident. So I take your point in terms of clearly established law, and I'm speaking now really in terms of the circuit law, not necessarily agreeing with you that it must be Supreme Court law in the case of, like, the habeas situation. But here's one of the hurdles that I'd like you to address as you think about and talk about the case law, and that is that we have this district court finding about the level of threat, and that's a district court finding that we're not really permitted to overrule or to view differently in an interlocutory appeal. So you continue to say that Nehara's conduct was threatening, and I see that throughout the briefs, but the district court found that that was a triable issue of fact. How does that then factor in on interlocutory appeal with respect to established law? Yes, Your Honor. First, the district court is not permitted to find a triable issue of fact under Rule 56 based on unreasonable inferences that are not supported, do not logically follow from the evidence submitted before that court. Okay, but don't you have people, testimony or statements from people that he was standing there with a bat pointed down? Isn't that what the district judge is drawing from to find that there was a triable issue, that he was standing there with a bat doing nothing except basically the bat's pointing down? I thought that was the basis for the district judge saying we have a triable error here, a triable question. Not exactly, Your Honor. The incidents where we're talking about a bat pointed down occurred long before the pepper sprays, and the universal witness testimony after the pepper spray deployments, which failed to overcome the suspect's resistance, was that the bat was in a raised batter stance, which all the witnesses to the shooting event described as threatening to the sergeant. What the district court and plaintiffs have referenced as potentially creating a triable issue in which the Matt Sushida case and the district court cannot be, cannot form the basis of a reasonable inference in favor of the non-movement are witnesses who did not see the shooting event, who were turned away or had their eyes closed at the time that shots were fired. Well, a witness who is not even able to perceive one way or the other what is happening during an incident cannot create a reasonable inference that something did or did not happen during that incident. The Supreme Court has been crystal clear that a mere scintilla of evidence is insufficient to create a triable issue sufficient under Rule 56 to defeat summary judgment. There must be more than some metaphysical doubt, according to the court in Anderson and Matt Sushida. There has to be enough evidence that a jury could find a verdict in favor of the non-movement. And here are two witnesses, Ms. Tolentino and Ms. Carbajal, who admit at record page 84 and at record page 189 that they weren't watching when the shots were fired. I didn't, I think we have the six shots fired, right? And I thought the medical testimony that two of the shots hit him in the back as he was falling. So he can't be a threat while he's falling. Isn't that another reason? Doesn't that present another triable issue of fact? No, Your Honor. And that's not the exact statement that the medical evidence presented. Dr. Schuman, who was the autopsy medical examiner in this case, as indicated record page 101, indicated that she can't testify exactly what position Mr. Najera was in when shots were fired. All she can do is say that certain evidence could be consistent with hypothetical A versus hypothetical B. She is not a witness as to what position Mr. Najera was in, nor is there any witness, nor was there any dispute below that Mr. Najera was not prone. He was not fall in at the time that shots were fired. In fact, all the witnesses to the time when shots were fired indicated in unanimity that at the time shots were fired, Mr. Najera was upright on his feet facing the deputy, holding the club or bat in a manner that each of those witnesses viewed as threatening the deputy from 15 feet or less. He obviously had to be turned in some way if two of the bullets went in his back. Yes, Your Honor. Don't you need test? I mean, then you have to be tested, have to have testimony about whether he could have stopped firing. You know, um, we don't know what we don't know about that at this time, do we? Even if that were true, Your Honor, even if there were some factual issue as to how far turned around Mr. Najera was at the time that those two shots entered his back, that doesn't negate the threat that was presented split seconds earlier to the deputy or his reasonable perception of an immediate threat of death or serious bodily injury. When you're talking about split second reaction times, the courts have held that officers are entitled to qualified immunity where reasonably competent officers could differ on the legality of the subject's incident actions. Why don't we, okay, um, why don't we just assume for the sake of this argument that some of the witnesses are going to find that he was either in a threatening position, are going to, there's going to be some kind of testimony that supports the district judge's view that there was a tribal issue as to whether he was being threatened at the point that he was, shots were fired at him that killed him. Okay. Assuming that to be the case, then isn't Hayes pretty much on point? No, Your Honor, because there are other Ninth Circuit cases and there's also the Fifth Circuit case, the Mace case. Can we just deal with Hayes? Sure. In Hayes, the difference, Your Honor, is distinguishable. In Hayes, the weapon was pointed down. There were no reports of a prior in his kitchen, a place where you would reasonably expect someone to be holding a knife. Mr. Nahira was found with the club outside of a third party's home with signs of visible injury. He wasn't found on a baseball field. He wasn't found, you know, in a game of... Okay, just a second. He's in, he's in, he's in his house, but he has a knife because he's planning to kill himself. Isn't that Hayes? He's not there to chop up artichokes. I'm sorry, I thought you were referring to Mr. Nahira. I thought you were referring to Mr. Nahira. Mr. Nahira was not in his house. Mr. Hayes was, Mr. Hayes is in his house. He's not in there in the kitchen chopping up food. He has a knife that he is going to kill himself with that. That's why he was holding it, right? He was going to kill himself? Yes, Your Honor, and that's distinguishable from Nahira. Nahira is not found in his home when he's holding the club. There are no prior threats in the Hayes case, whereas in the Nahira case, there were reports that he had threatened a woman and her child with that club. There were signs of and where there are distinguishable facts. Hayes has a knife. I'm not exactly sure what position it's in. It seems to be down. We have a lot of commotion and disturbance, a domestic situation. The policemen in that point don't really know whether there's a crime or not, right? That's correct, Your Honor, for Hayes. Okay. So, you're distinguishing for Hayes, if I can just get through this, are that you think it's because he was in his home and you think it's because there was no clear prior crime. What else do you have for Hayes? Sure. Hayes, there were no reports of prior threats to others. In Nahira, there were reports of prior threats by Nahira to a woman and her child and violence against property. In Hayes, there were no observed intercourse. Let's stop there because there is a report of the prior threat, all right? But at the point that the officers fire their weapon, what effect does that have? Because there is really a breaking point between the prior threat, they arrive on the scene, and now here he is. At one point, he has the club or piece of wood down, and at one point, according to you, he has it up, correct? Yes, Your Honor. And then we know in the end, he's shot in the back at least twice. So, there's a continuum of evidence. At what point, in your view, is the threat to be analyzed? The threat is to be analyzed at the point where the no dispute below in any of the evidence or the facts that after the pepper spray, Mr. Nahira had the club or bat in a raised position that all the witnesses to the shooting viewed as threatening to the deputy. So, unlike Hayes, this case is much more like Hayes. So, we need to analyze it at the time the lethal force is employed? Yes, that's the point I'm talking about, Your Honor. No, you were saying at the point the weapon is raised. Which is after the pepper spray, and the weapon stays raised, according to the facts, from pepper spray until shot's fired. I see my time has expired. If I may briefly conclude, Your Honor. Sure. Because this case is such a case that reasonable officers could differ about the legality of Sergeant Ponder's actions, this case is subject to qualified immunity. The facts of this case are distinguishable from the facts of the cases cited by plaintiffs, and therefore, this court should reverse and grant qualified immunity to the defendant. Thank you. Thank you, Your Honor. Mr. Gliffo. You're muted. How about now? That works. Oh, good. Sorry. Good afternoon, everyone. From the plaintiffs and appellees' perspective, we think this is an easy call for the Court of all of the plaintiff's facts to be true, and all reasonable inferences, we have someone standing 15 feet away from the officer, stationary, not advancing, not charging, no verbal threat, not attempting to swing the bat, not attempting to throw the bat. In fact, he was described by one or two witnesses, which we cited as nonthreatening, and holding the heavy end of the bat against his shoulder. And the other cases, such as the case Judge Rustani correctly cited, the Hays case, there was a large knife with the individual advancing towards the officers with the large knife and got six or eight feet away. And in that case, they didn't think that was reasonable as a matter of law. We have someone stationary and 15 feet away here, really with a blank stare on his face. There was no verbal warning that shots were going to be given. There were other reasonable options. And as the court already correctly pointed out, there were two volleys of shots. And taking all of our facts and reasonable inferences, there was a pause between the two volleys of shots. The decedent had turned away from the shooter, which is obviously supported by the medical examiner's findings of two shots to the back. Importantly, those were the fatal shots, by the way. And because of the upward trajectory of those shots, the medical examiner opined, as Judge Rustani, I believe, pointed out, that that's consistent with the decedent not only having his back to the shooter at that time, but falling forward and away from the shooter, which would result in the upward trajectory of those shots. It seemed to me that both sides need to agree, of course, if there's a factual finding by the district court, that we're not in a position to overturn that unless it goes against all the permissible inferences. And that, of course, is what the officer's position is. So the conflict here, which I'd like you to address, seems to be that, of course, at some point he has the club down, but in the officer's recounting of the story, that club comes up. And that is the threatening act. So he links that then to the only witnesses who had direct visibility at that time. So I'd appreciate it if you could address, because it seems to me that the case in some ways rises and falls on the district court's finding that there is a triable issue of fact. And if that's not the case, then we go back and we reevaluate it, you know, under looking at the cases a little differently. So how do you deal with his claim? And I'm not saying I accept or reject his claim, but just his claim that the witnesses who saw the club up are the only ones to make that testimony, and nobody else was in a position to make that declaration. Well, first of all, clearly the district court carefully looked at this, and in making her ruling, she outlined the disputed issues of fact in her ruling. And I think that's one of the reasons we raised the issue as to whether this court even has jurisdiction to hear this, an interloperatory appeal, because of the disputed issues. I guess if you take every fact in our favor, then perhaps. But to specifically address your question, it's a mischaracterization of the evidence and the record below. Specifically, a witness, Ulysses Lucia, who we cited quite frequently in the separate statement, said that he was holding the bat in a non-threatening manner, 15 feet away from the officer, and no advancing, no charging, etc. Even if the bat was raised, even if some of them saw it raised, the description, and this is important, is that the heavy end of the bat was resting against his shoulder, not in a striking or swinging or threatening manner. He was simply standing stationary, not advancing, with a perplexed look on his face after he had been pepper sprayed twice. And then, without warning, the officer starts shooting, and he turns away from the officer. There's a pause, and the officer continues shooting him, shooting him in the back as he's going to the ground. So I think there's at least two witnesses that clearly testified that he is stationary, 15 feet away, in a non-threatening manner. And with respect to the law, and I know your honors are very well aware of this, the law has been clearly established for a long time in our circuit that to use deadly force, there has to be an immediate threat of death or possible threat. I mean, if you have a person stationary, one of the distinguishing factors in the other cases we cited was that the people were approaching the officer with a knife, or in Newmaker, within three feet with a baton. Here you have someone, very importantly in our mind, who's not approaching or advancing or swinging or throwing. He's simply standing there, whether it's down or up is not the critical issue, I don't believe, if it was held against his shoulder in a non-threatening manner as described by the witnesses. So in any of the cases that we cite, Hayes included, I agree with Judge Rustani, but there's multiple other cases we cited, including Zion v. County of Orange and Tan Lamb. Okay, now let's talk about that case, because after the Supreme Court's ruling in Tahlequah, it seems to me that the Supreme Court made clear what I think the circuit understood before, is how can something be clearly established if the officer couldn't have had knowledge of it because it was decided and published after the officer engaged in the alleged conduct? Right, well, you know, of course this all relies on the fallacy that our good law enforcement officers are reading the Ninth Circuit opinions on the weekend, but be that as it may, what I think is important is that those cases reviewed all the case law and those incidents, as you're aware, happened in 2013. And both courts held as of 2013, as of the time of those underlying incidents, the law was clearly established that you could not use deadly force under those circumstances and it would be there is a certain fiction suggesting that the officers are sitting up on weekends reading the Ninth Circuit opinions along with the rest of the public, but we do know that departments do periodic training and updates on what the law is for precisely this reason. So I'm really not sure that we can rely on Zion in any way in terms of its conclusion. Do you need Zion to establish your case? No, absolutely not, nor do we need Tam Lamb. I mean, we cited a group of cases and just using Hayes as an example, because I do think it's a very good example, you have somebody with a dozen officers getting within six to eight feet. That's Hayes. It was a kind of difference with Hayes in our case. I mean, I know that in neither case did they say drop it or we'll shoot, but in Hayes there was no direction at all. And in our case, the one we have now, he said drop the bat, I think several times, or drop the weapon, whatever. And there wasn't any time in Hayes, I don't think, for them to say anything like that. So is that a distinguishment that means Hayes is not directly on point? No, not at all. Because the real issue, as I think your honors have alluded to, is whether there was an immediate threat. And in this case, an immediate threat of death or serious bodily injury at the time the shots were fired. And that means all of the shots, including the second volley that struck him in the back. And again, if you take the findings of the district court, if you assume all our facts, you have someone 15 feet away stationary, not advancing, charging, or making any threatening movement with this bat, and shot without warning. I really feel if there's a case nowadays that falls within the obvious, this is it. But in addition to that, there's a lot of case law, Hayes and the other cases that we cited, including Van Bui and other cases that clearly established that under the plaintiff's facts, the use of deadly force would be excessive. And at a minimum, there's tribal issues of fact here that would have to be sorted out by a jury. So those are my main comments. If anyone has any questions on either the facts or any of the cases, I'd be happy to answer them. Appear there's no further questions. So we'll go back to you very much. Thank you. You're now on mute. Thank you, your honor. Now we're gonna all get this down someday, because we do it all the time. Hopefully not too soon. By the time we're all back in the courtroom. I hope it's sooner rather than later. Me as well, your honor. I think it's impossible to say that the law was clearly established at the time of our incident when there were prior cases, including cases from this circuit, where similar facts to our incident were held to be reasonable as a matter of law. The Blandford case, which is a 2005 case, there was a sword wielder who had turned away from the officer. The sword was undisputedly held in a non-threatening position. There was no charge, no advance whatsoever. And in that case, the court held as a matter of law that the use of deadly force, the shooting was reasonable. The Fifth Circuit in 2003 in the Mace case had a similar case where a sword wielder was holding a raised sword. It was disputed as to whether or not there was an advance. And also the shots fired were deemed to be reasonable as a matter of law. As Judge Gould himself... Oh, I think there's a few other facts you might want to throw in on Blandford. And that was, they asked him to drop it, right? And then there was some big growl and it comes up and we don't have any of that. We have multiple commands. We have multiple at gunpoint commands for him to disarm, all of which he did not comply with. But I think it's important to note as... Well, and they told him they would, the Blandford officers said they would shoot him if he didn't comply. And that is certainly a difference, correct? There's a difference for Blandford on our side, but we're not entitled, we're not required to point out a factually specific case on point that shows the force was reasonable, even though we have pointed out a case that's largely analogous that shows reasonable use of force. And as Judge Gould pointed out in the Isaeva case, officers are entitled to qualified immunity when reasonably competent officers could differ as to whether or not the officer's actions were legal. I don't believe that anyone could look at Sergeant Ponder's conduct in this incident and say that it was plainly incompetent, that it was absolutely unconstitutional no matter what, when there's differing cases with different case law and different facts that go on both sides of the issue. Officer Ponder, Sergeant Ponder was faced with a subject who was armed with a weapon that had been trained at less than 21 feet, could be deadly. He was faced with a subject who was not complying with multiple at gunpoint commands to disarm, a subject who was 15 feet away, a distance that Sergeant Ponder had been trained to treat as elevating the threat of death or serious bodily injury to him. And according to Sergeant Ponder and all the witnesses to the shooting part of the incident, as opposed to prior parts, at the time shots were fired, Mr. Najera was facing the sergeant with the bat raised in a threatening position. Now, even if Sergeant Ponder was wrong, even if Sergeant Ponder was erroneous about whether or not that bat was raised, even if he was incorrect that there was a threat, on the facts confronting him, I don't believe that one can say he was plainly incompetent. Can I ask about another fact, that the SUV was right there and he could have taken refuge beyond the SUV, behind the SUV at the time that he thought the bat was going to come fly in his way? Isn't that? See, my time is about to expire. We can't get out of the question that way. You've got all the time in the world to answer the question. Thank you. The facts are unclear as to how far the SUV was from him and whether it could have provided adequate cover at that time, but it's also not relevant to the issue here. None of the cases that plaintiffs cite have facts directly on point to our facts. They are all distinguishable one way or the other, and because of that, Sergeant Ponder was entitled to qualified immunity, and so we ask the court to award it to him here. Thank you. We'd like to thank both counsel for your arguments. Very well done. I think we have your points well in mind. The case of Nehara versus Rivers County of Riverside and Mr. Ponder is now submitted. Total Recall versus Palmer Luckey is on the briefs.
judges: McKEOWN, GOULD, Restani